David W. PADGETT, Appellant,

v.

David STEINBRECHER and Claysville Landing, LLC, Appellees.

No. 2010–CA–000647–MR.

Court of Appeals of Kentucky.

Nov. 4, 2011.

John E. Spainhour, Shepherdsville, KY, for appellant.

Myrle L. Davis, Louisville, KY, for appellee.

Before ACREE and STUMBO, Judges; LAMBERT,[1] Senior Judge.

## OPINION

**ACREE, Judge:**

The issue before us is whether the Jefferson Circuit Court properly denied Appellant David W. Padgett's motion to dismiss in favor of arbitration on the grounds the court lacked jurisdiction under KRS 417.200 to enforce the parties' arbitration agreement because the agreement did not explicitly require that arbitration occur in Kentucky. For the following reasons, we affirm.

### Facts and Procedure

Padgett is the majority owner and managing member of Claysville Landing, LLC (Claysville Landing), a Kentucky Limited Liability Company. Padgett retains a 32.5% ownership interest in Claysville Landing. Appellee David Steinbrecher is also a member of Claysville Landing with an 11.11% ownership interest. Claysville Landing is a single asset entity, which constructed, operated, and ultimately sold an 88–unit apartment complex in Elizabethtown, Kentucky.

On May 1, 2006, Padgett, Steinbrecher, and the other members of the LLC, entered into an Amended and Restated Operating Agreement (Operating Agreement)

---

1. Senior Judge Joseph E. Lambert sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statute (KRS) 21.580.

which set forth the rights, duties, and obligations of its members. In the event of a dispute between members, the Operating Agreement required them to submit to arbitration; it stated as follows:

Paragraph 13.11, Dispute Resolution: Whenever the Members shall have any dispute among themselves or with the Manager relating to the interpretation, construction, or implementation of the Company Agreement or shall be deadlocked or shall otherwise be in dispute with respect to the relations among the Members or between the Members and the Company or the Members and the Manager or any other matter related thereto, the matter shall be resolved as follows:

. . . .

(b) Second, if such dispute cannot be resolved through good faith negotiations during the sixty (60) day period provided in Section 13.11(a), the Members shall submit such dispute to arbitration. Any arbitration required under this Section 13.11 shall be conducted in accordance with the rules of the American Arbitration Association then in effect in Kentucky with respect to expedited arbitrations, but if the dispute involves a dollar amount in excess of $200,000.00, providing for at least three (3) arbitrators. All arbitrators shall have at least ten (10) years' experience in the purchase and sale of commercial real estate. The determination of the arbitrator(s) shall be binding and conclusive on the parties, and judgment on such decision may be entered by the prevailing party in any court of competent jurisdiction. Each member shall bear the cost of one arbitrator and they shall split the cost of the third arbitrator, provided that if the arbitrator believes that any decision taken by a member is frivolous, the arbitrator may award arbitrator's fees to the prevailing party. Each party shall pay its own attorney's fees.

On November 2, 2009, Steinbrecher filed the instant action against Padgett alleging, *inter alia*, breach of contract and breach of fiduciary duty resulting from numerous violations of the Operating Agreement. Thereafter, on November 23, 2009, Padgett filed a pre-answer motion pursuant to Kentucky Rules of Civil Procedure 12.02 seeking to dismiss the suit in favor of arbitration. The circuit court denied Padgett's motion, concluding it lacked jurisdiction to enforce the Operating Agreement's arbitration clause because it did not specify that the arbitration must take place in Kentucky. Padgett promptly appealed from the circuit court's interlocutory order.

### Standard of Review

In reviewing an order denying enforcement of an arbitration clause or agreement, we apply a two-fold standard of review. *See* KRS 417.220(2) ("The appeal shall be taken in the manner and to the same extent as from orders or judgments in a civil action."). First, we examine the trial court's findings of fact. *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 340 (Ky.App.2001). Those factual findings are reviewed under the clearly erroneous standard and are deemed conclusive if they are supported by substantial evidence. *Id.* Second, we review the circuit court's legal conclusions *de novo* to determine if the law was properly applied to the facts. *Id.*

### Analysis

Before we address the merits, we first must determine whether this Court has jurisdiction over Padgett's interlocutory appeal. While the parties did not raise the issue of appellate jurisdiction in their briefs, we are the guardians of our

jurisdiction and thus are obligated to raise a jurisdictional issue *sua sponte* if the underlying order appears to lack finality. *Kentucky High School Athletic Ass'n v. Edwards*, 256 S.W.3d 1, 4 (Ky.2008); *Hook v. Hook*, 563 S.W.2d 716, 717 (Ky.1978) ("Although the question is not raised by the parties or referred to in their briefs, the appellate court should determine for itself whether it is authorized to review the order appealed from.").

It is well-settled in this Commonwealth that no decision issued by a court may be appealed unless the decision is final. CR 54.01; *Town of Wallins v. Luten Bridge Co.*, 291 Ky. 73, 163 S.W.2d 276, 279 (Ky. App.1942) ("Only a final order is appealable.") (citation omitted). "A final or appealable judgment is a final order adjudicating all the rights of all the parties in an action ... or a judgment made final under CR 54.02." CR 54.01; *see also State Farm Mut. Auto. Ins. Co. v. Caudill*, 136 S.W.3d 781, 783 (Ky.App.2003); *Security Federal Sav. & Loan Ass'n of Mayfield v. Nesler*, 697 S.W.2d 136, 138 (Ky.1985) (providing a final order is "one which adjudicates the rights of all the parties" leaving nothing left undone).

▮ Ordinarily, this Court lacks jurisdiction to review a trial court's order denying a motion to dismiss because such an order is interlocutory in nature. *See Kindred Hospitals Ltd. Partnership v. Lutrell*, 190 S.W.3d 916, 917 (Ky.2006); *Dumont v. Payne*, 24 Ky.L.Rptr. 288, 68 S.W. 418, 419 (1902) (holding an order overruling a motion to dismiss is not final; as a result, the order is interlocutory and non-appealable). Similarly, an order compelling or denying arbitration is, by definition, an interlocutory order because it fails to adjudicate "all the rights of all the parties," thus lacking finality. CR 54.01.

In 1984, however, the Kentucky Legislature adopted the Uniform Arbitration Act[2] and, in turn, KRS 417.220(1), which provides for the immediate appeal of certain interlocutory orders that are hostile to arbitration. *See* KRS 417.220(1)(a)–(b); *Cavalier Homes of Alabama v. Coleman*, 181 S.W.3d 558, 559 (Ky.2005) (noting "the General Assembly has, by the foregoing enactment, created a statutory interlocutory right of appeal where no such right would otherwise exist"). KRS 417.220(1)(a), in particular, provides that "[a]n appeal may be taken from an order denying an application to compel arbitration made under KRS 417.060."

▮▮ Here, Padgett filed a motion to dismiss in favor of arbitration and the circuit court ultimately entered an order denying Padgett's motion. Though the motion is styled as a motion to dismiss in favor of arbitration, as opposed to a motion to compel arbitration, the character of a pleading is ascertained from its subject matter, not its title or label, in a manner promoting fair play and substantial justice. CR 8.06 ("All pleadings shall be construed as to do substantial justice"); 6 Kurt A. Philipps, Jr., David V. Kramer, & David W. Burleigh, *Kentucky Practice: Rules of Civil Procedure Annotated* Rule 8.06 (6th ed.2005). We therefore examine the substance of the pleading to determine its nature. *Id.*

▮ In his motion, Padgett sought to dismiss Steinbrecher's claims on the grounds that they are subject to arbitration under the parties' Operating Agreement. By filing his motion to dismiss, Padgett was in essence seeking to extinguish Steinbrecher's lawsuit in order to compel him to arbitrate his claims. Moreover, the parties' arguments to this Court evidence an understanding that Padgett

---

**2.** The General Assembly codified the Uniform Arbitration Act in KRS 417.045–.240.

was seeking to enforce the arbitration clause in the parties' Operating Agreement by requesting that the circuit court dismiss Steinbrecher's suit in favor of arbitration. The resulting effect of the circuit court's order denying Padgett's motion to dismiss was to deny him his claimed right of arbitration. Accordingly, we construe Padgett's motion to dismiss in favor of arbitration as a motion to compel arbitration and, similarly, the circuit court's order denying Padgett's motion as an order denying a motion to compel arbitration. *See, e.g., Turi v. Main Street Adoption Services, LLP,* 633 F.3d 496, 501 (6th Cir.2011); *Kel Homes, LLC v. Burris,* 933 So.2d 699, 705 (Fla.Dist.Ct.App.2006) (adduce as same a motion to dismiss in favor of arbitration and a motion to compel arbitration). This finding comports with the policy of this Court, compelled by our interpretation of KRS 417.220(1)(a), to review a trial court's order which forecloses a party's right to arbitration. *See American General Home Equity, Inc. v. Kestel,* 253 S.W.3d 543, 547 fn. 2 (Ky.2008) (distinguishing the appealability of an order denying a motion to compel arbitration, which hinders arbitration and is immediately appealable under KRS 417.220(1)(a), from an order compelling arbitration, which does not have a negative effect on arbitration and is not immediately appealable). As a result, KRS 417.220(1)(a) grants us jurisdiction to consider this matter.[3] *See Wilder,* 47 S.W.3d at 340 (confirming, pursuant to KRS 417.220(1)(a), this Court retains jurisdiction to review an appeal from an otherwise interlocutory order denying a motion to compel arbitration).

Turning to the merits of this appeal, the parties do not dispute the validity of the arbitration clause, nor do the parties dispute that, if enforceable, the arbitration clause covers all of Steinbrecher's claims. Instead, Padgett contends the circuit court erred in finding the arbitration clause in the parties' Operating Agreement did not require arbitration to occur in Kentucky. As a result, Padgett argues, the circuit court improperly relied on *Ally Cat, LLC v. Chauvin,* 274 S.W.3d 451 (Ky.2009) in concluding it lacked jurisdiction to enforce the arbitration clause.

In response, Steinbrecher asserts the arbitration clause in question does not satisfy the Kentucky Arbitration Act's jurisdiction statute, KRS 417.200, and thus the circuit court properly determined it had no subject matter jurisdiction to enforce the Operating Agreement's arbitration provision. Steinbrecher's argument is well-taken.

KRS 417.200 provides:

The term "court" means any court of competent jurisdiction of this state. The making of an agreement described in KRS 417.050 providing for arbitration in this state confers jurisdiction on the court to enforce the agreement under this chapter and to enter judgment on an award thereunder.

In *Ally Cat, LLC v. Chauvin,* 274 S.W.3d 451 (Ky.2009), the sole case relied upon by the circuit court, our Supreme Court, interpreting KRS 417.200, concluded the phrase "providing for arbitration in this state" carries particular meaning that courts are not at liberty to ignore or discard. *Ally Cat,* 274 S.W.3d at 455. As a result, the Supreme Court concluded:

Subject matter jurisdiction to enforce an agreement to arbitrate is conferred upon a Kentucky court only if the agreement provides for arbitration in this state. Thus, an agreement to arbitrate which fails to include the required provision for

---

**3.** As a practice pointer, we encourage practitioners to accompany a motion to dismiss in favor of arbitration with a petition or motion to compel arbitration. *See* KRS 417.060(1).

arbitration within this state is unenforceable in Kentucky courts.

*Id.* Accordingly, unless an arbitration clause or agreement explicitly states the arbitration is to be conducted in Kentucky, Kentucky courts lack jurisdiction to compel arbitration. *See id.* at 455–56.

■ Padgett argues the arbitration clause at issue *does* require arbitration in Kentucky, thus satisfying *Ally Cat*'s mandates. In support, Padgett relies exclusively on the following phrase in the arbitration clause: "any arbitration required under this Section 13.11 shall be conducted in accordance with the rules of American Arbitration Association then in effect in Kentucky with respect to expedited arbitrations." The phrase "in Kentucky" is meaningless, Padgett argues, unless it is construed to require arbitration in Kentucky. We disagree.

In *Ally Cat,* the arbitration clause in dispute provided that any claims or disputes between the parties "shall be settled by binding arbitration submitted to a professional arbitration service under its rules relating to the construction industry and the Kentucky Arbitration Act." 274 S.W.3d at 452. Despite the fact that the arbitration clause provided it was governed by the Kentucky Arbitration Act, the Supreme Court determined the clause failed to provide that the arbitration was to occur in Kentucky. *Id.* at 455. We discern no meaningful distinction between the arbitration clause in *Ally Cat* and the arbitration clause in the case *sub judice* which would cause us to agree with Padgett that the phrase he highlights requires the arbitration to occur in Kentucky. Merely referencing Kentucky in an arbitration clause is insufficient to confer jurisdiction. As clearly elucidated by our Supreme Court, the arbitration clause must

specifically and unequivocally provide for arbitration in this Commonwealth. *Ally Cat,* 274 S.W.3d at 455. The arbitration clause at issue here simply does not.

■ Moreover, as noted, the arbitration clause at issue directs the arbitrator to apply the American Arbitration Association rules in effect in Kentucky. This is akin to a contractual choice-of-law provision, which directs the law that is to be applied to a given dispute. *See Black's Law Dictionary* 234 (7th ed.1999); *see also Hathaway v. Eckerle,* 336 S.W.3d 83, 87 (Ky.2011) (providing that "choice of law provisions are generally valid in arbitration clauses"). *Ally Cat* requires not a choice of law provision, however, but a forum-selection or venue clause designating the particular state in which the arbitration must proceed. *Black's Law Dictionary* 665 (7th ed.1999) (defining forum-selection clause). By definition, a choice-of-law provision is not a forum-selection clause. *See* John R. Leathers, *Choice of Law in Kentucky,* 87 Ky. Law J. 583, 599 (Spring 1999) (distinguishing between choice of law and choice of forum provisions, and noting that a choice of law clause ... provides that, in whatever forum, disputes between the parties will be governed by the law of a chosen jurisdiction). Hence, a lawsuit may be brought in one state pursuant to a forum-selection clause, but apply the laws of another state pursuant to a choice-of-law provision. *See, e.g., Heer v. Price,* No. 1:06CV–114–R, 2007 WL 1100693, at *2–3, *5 (W.D.Ky. April 11, 2007) (recognizing that choice of law and forum selection provisions may differ).[4]

Here, the arbitration clause in the parties' Operating Agreement directed the arbitrator to apply the American Arbitration

---

4. We do not cite this case for its precedential value, but merely to illustrate a factual scenario in which the forum and law applied differ.

Association rules in effect in Kentucky, but did not include a purported forum selection clause explicitly requiring the arbitration to occur in Kentucky. The arbitration clause simply fails to designate where the arbitration is to take place. Such failure is fatal to the arbitration clause's enforceability in this Commonwealth. *Ally Cat*, 274 S.W.3d at 455.

 Padgett also argues that *Ally Cat* has been satisfied because the explicit incorporation in the arbitration clause of the American Arbitration Association rules includes the incorporation of the rule permitting the parties to choose the arbitration's location. Padgett refers particularly to American Arbitration Association Rule 13, which states:

> The parties may mutually agree on the locale of the arbitration that is to be held. If a party requests the hearing to be held at a specific locale and the other parties files no objection thereto within ten days after the notice of the request has been sent to it, the locale shall be the one requested. If a party objects to the locale requested by the other party, the AAA shall have the power to determine the locale and its decision shall be final and binding.

The incorporation of this rule into the parties' arbitration clause does not cure its defect, *i.e.*, the failure to specifically designate Kentucky as the forum for the arbitration. In fact, it is precisely this type of clause that *Ally Cat* seeks to prohibit. A clause authorizing the parties to agree on the arbitration's location, which may in turn result in a Kentucky arbitration, is insufficient to satisfy KRS 417.200. Instead, as stated in *Ally Cat*, the agreement must unequivocally provide for arbitration in this state. 274 S.W.3d at 455. Padgett's argument is without merit.

Finally, Padgett groundlessly argues that *Ally Cat* is entirely inapplicable here.

Padgett points us, just as he pointed the circuit court, to the statement in *Ally Cat* that the Supreme Court has "not heretofore, and do not now, address the situation in which a similarly defective arbitration clause leads to an action to enforce an arbitration award, where the arbitration hearing did in fact occur in Kentucky." 274 S.W.3d at 456. As the circuit court noted, and we readily repeat, this argument would carry more weight had the arbitration already occurred in Kentucky—it has not. There is no question that Padgett is attempting to enforce a defective arbitration provision *before* the arbitration has taken place; as explained, *Ally Cat* prohibits him from doing so.

### Conclusion

We find that because the arbitration clause fails to explicitly require arbitration in Kentucky, the circuit court lacks jurisdiction to enforce arbitration pursuant to KRS 417.200. The Jefferson Circuit Court's order denying Padgett's motion to dismiss in favor of arbitration is affirmed.

ALL CONCUR.